IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JUNE CHO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:18-cv-00288-WO-JLW |
| | ) |
| DUKE UNIVERSITY and MARILYN HOCKENBERRY | ) |
| | ) |
| Defendants. | ) |

## DECLARATION OF KIMBERLEY FISHER

1. My name is Kimberley Fisher. I am over the age of 18 and am competent to make this Declaration which is based on my own personal knowledge and I give this Declaration as part of the lawsuit brought by June Cho ("Dr. Cho").

2. I am the Director of the Neonatal-Perinatal Research Unit ("NPRU") at Duke University. I have held this role since August 1, 2006. I have a joint academic appointment with both the Duke University School of Medicine and School of Nursing.

3. The NPRU is a "closed unit" for research meaning that all research done in the neonatal intensive care unit must come through the NPRU. Because Dr. Cho's study involved obtaining saliva samples from premature newborns, I reviewed Dr. Cho's study protocol when she first arrived at Duke. After my review, I met with Dr. Cho and tried to explain that some protocols contradicted the standard of care practices for Duke's newborn intensive care unit and special infant care unit. For example, I explained that premature infants are fragile, and it may not be feasible to obtain multiple saliva samples at 15 minute intervals as stated in the protocol. I also explained that, because of space, some infants who are stable may be moved to another facility prior to reaching 40 weeks when the final pre-discharge sample was to be collected under the protocol. Dr. Cho was not receptive to these concerns and would not agree to any alteration of the protocol. Based on Dr. Cho's inflexibility and responses, I did not feel comfortable providing Dr. Cho a Study Coordinator from my unit who would be responsible for oversight of study-related matters. I deferred to her department, the School of Nursing, to provide the Study Coordinator.

4. I knew and had worked with the Study Coordinator the School of Nursing identified to work with Dr. Cho. Her name is Becky Jones. Ms. Jones previously worked as a neonatal intensive care unit nurse with the NPRU.

5. In the summer of 2016, Ms. Jones told me that she was leaving Duke to attend medical school in mid-July. As a favor to her, she asked me if I would take an active role in Dr. Cho's study because she had concerns for staff in light of the treatment she received from Dr. Cho. I agreed to do so conditioned on Dr. Cho's assurance that communication with NPRU staff would go through me.

6. Shortly after I became involved, Dr. Cho began complaining about my staff and about low recruitment numbers for her study. I explained that the neonatal intensive care unit census was unusually low. In fact, the low census was something that, as a department, we looked into to try to determine what may be causing the low numbers. We did not find an explanation for the slow down.

7. On or about November 9, 2016, one of my staff who had attended a conference told me that she spoke with a coordinator from University of Alabama at Birmingham ("UAB") who said Dr. Cho had reopened enrollment at UAB. I received confirmation that Dr. Cho had contacted UAB in August or September and that they had enrolled four subjects in the past two weeks. I spoke with Dr. Cho who commented to the effect of "Duke thinks it needs to know everything." Duke as the governing IRB had ultimate responsibility for ensuring the integrity of the study and compliance with all regulations. Duke did need to know everything. Dr. Cho's failure to obtain approval was significant.

8. As the regulatory coordinator listed on Dr. Cho's study, I felt personally at risk because of Dr. Cho's actions. I felt that re-opening enrollment at UAB without Duke IRB approval showed a disregard for rules and regulations applicable to research. I consulted with the chief of Neonatology and the medical director for research. It was decided that the NPRU would no longer work with Dr. Cho. Because all neonatal intensive care research must come through the NPRU, I understood this decision meant that recruitment at Duke for this study would no longer be allowed and Dr. Cho would need to find another site. I did not trust that Dr. Cho was capable of having a collegial relationship that would ensure that the integrity of the research would be maintained. I informed the School of Nursing of the decision in December 2016. I understood that Dr. Cho's study was undergoing an audit and that recruitment was on hold until the audit was completed. I began drafting stipulations regarding follow up for the subjects already enrolled at Duke moving forward.

9. In June 2017, Dr. Turner, Dean Broome, Dr. Hockenberry, Phyllis Kennel and I attended the Faculty Hearing Committee hearing of Dr. Cho's grievance. The Committee issued its unanimous decision in July 2017 that Dr. Cho was not the

2

subject of impermissible harassment or academic due process violations. Importantly, the Committee's decision noted that Dr. Cho utilized the term "harassment" to refer to alleged "general mistreatment by administration that she found detrimental to her research," not harassment based on national origin or any other protected category. It is my understanding that the Faculty Hearing Committee's decision was upheld at all levels of internal appeal pursued by Dr. Cho.

10. On or about August 2017, I was made aware that Dr. Cho filed a charge with the Equal Employment Opportunity Commission alleging national origin discrimination and retaliation. It is my understanding that the EEOC did not find a violation and dismissed the case. This is the first I heard of Dr. Cho alleging national origin discrimination. At no time prior had Dr. Cho raised or expressed any concern to me that she felt discriminated against because of her national origin

11. I did not and do not harbor any discriminatory animus toward Dr. Cho because of her national origin. I did not take any action concerning Dr. Cho because I believed she had raised concerns about national origin discrimination. I am not aware of anyone making any derogatory comments or remarks regarding Dr. Cho's national origin. I understand Dr. Cho contends that I made a statement regarding her being difficult to communicate with. I believe Dr. Cho is a difficult person to communicate with, but that has nothing whatsoever to do with her national origin. The difficulty stems from her attitude and lack of respect for those who were trying to help her.

## DECLARATION PURSUANT TO 28 U.S.C. § 1746

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

*Kimberley Fisher*
Kimberley Fisher

Date: 4/5/2019

3